FILED
United States Court of Appeals
Tenth Circuit

November 25, 2025

Christopher M. Wolpert
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

_____

COLTON JAMES RILEY,

     Plaintiff - Appellant,

v.

COMMISSIONER, SSA,

     Defendant - Appellee.

No. 25-5007
(D.C. No. 4:24-CV-00187-GAG)
(N.D. Okla.)

_____

ORDER AND JUDGMENT[*]
_____

Before **TYMKOVICH**, **BALDOCK**, and **PHILLIPS**, Circuit Judges.
_____

Colton James Riley appeals the district court's affirmance of the Social

Security Administration's conclusion that Riley does not qualify for disability

benefits. We have jurisdiction under 42 U.S.C. § 405(g) and 28 U.S.C. § 1291. We

reverse and remand to the agency for further proceedings.

## I.    BACKGROUND & PROCEDURAL HISTORY

In May 2018, at the age of twenty-one, Riley suffered a severe traumatic brain

injury in a car accident. He has since filed at least three applications for Social

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Security disability benefits.  His third application is the one currently at issue.  For procedural reasons we need not summarize here, the question raised by this application is whether Riley was disabled on or before March 31, 2020.

An ALJ found Riley suffered from "the following severe impairments [as of the cutoff date]: major depressive disorder, post-traumatic stress disorder (PTSD), anxiety disorder, unspecified neurocognitive disorder, and status post traumatic brain injury in 2018 with residuals of shortness of breath with exertion and dizziness." Aplt. App. vol. I at 28 (formatting normalized).[1]  But looking at what Riley could still do despite his impairments (*i.e.*, his residual functional capacity, or RFC), the ALJ found Riley could "understand, remember, and carry out only simple instructions on a sustained basis in a work-related setting."  *Id.* at 31.  The ALJ derived this conclusion from the report of a psychologist, Dr. Rebecca Fisher, who examined Riley in December 2018 and concluded he had a "moderate limitation in his ability to understand and remember simple instructions, [but] marked limitation in his ability to understand and remember detailed instructions, [and] marked limitation in his ability to sustain concentration, persistence, and pace for detailed tasks."  Aplt. App. vol. III at 579.

In light of this RFC finding, the ALJ found Riley could perform simple jobs such as laundry sorter, hotel housekeeper, and inspector and hand packager.  The ALJ further found these jobs exist in sufficient numbers in the national economy.  The

---

[1] The appendix has multiple inconsistent pagination systems.  We cite to the non-boldfaced numerals in the bottom-right corner of each page.

ALJ therefore concluded Riley did not meet the Social Security program's definition of "disabled" as of the relevant date.

Riley appealed to the Social Security Appeals Council, which denied relief, and then to the United States District Court for the Northern District of Oklahoma, which likewise denied relief.  He then brought the appeal currently before us.

## II.    ANALYSIS

"We review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether correct legal standards were applied."  *Barnett v. Apfel*, 231 F.3d 687, 689 (10th Cir. 2000).  Moreover, "[t]here are specific rules of law that must be followed in weighing particular types of evidence in disability cases.  Failure to follow these rules constitutes reversible error."  *Reyes v. Bowen*, 845 F.2d 242, 244 (10th Cir. 1988) (citation omitted).  This case presents the latter situation.

As noted, Dr. Fisher said Riley has a "moderate limitation in his ability to understand and remember simple instructions, [but] marked limitation in his ability to understand and remember detailed instructions, [and] marked limitation in his ability to sustain concentration, persistence, and pace for detailed tasks."  Aplt. App. vol. III at 579.  In turn, the ALJ found Riley could "understand, remember, and carry out only simple instructions on a sustained basis in a work-related setting," Aplt. App. vol. I at 31, and this finding was crucial to the ALJ's determination that Riley could still do simple jobs like laundry sorter.

Riley points out that Social Security regulations require the ALJ to explain why he found Dr. Fisher's opinion persuasive. Specifically, the ALJ must discuss the opinion's "supportability and consistency." 20 C.F.R. § 404.1520c(b)(2). In this context, "supportability" looks at "the objective medical evidence and supporting explanations presented by a medical source . . . to support his or her medical opinion(s)." *Id.* § 404.1520c(c)(1). We could rephrase this as a requirement to ask, "Are the examiner's opinions well explained, and are they supported by the medical evidence he or she relied upon?"[2]

In this case, the ALJ discussed the supportability of Dr. Fisher's opinion as follows: "Her opinion is supported by her consultative examination findings of deficits in memory, [and] attention / concentration . . . ." Aplt. App. vol. I at 35. Riley argues the ALJ did not adequately explain this conclusion. Under the circumstances, we agree.

This is not a generic failure to say more when more could have been said. Certainly, "[t]he more comprehensive the ALJ's explanation, the easier our task [as a reviewing court]; but we cannot insist on technical perfection." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). Still, we must be able to "follow the adjudicator's reasoning." *Id.*

---

[2] The other requirement, "consistency," looks at whether the opinion is consistent with other examiners' opinions and other medical data in the record. *See id.* § 404.1520c(c)(2). In short, "supportability" looks at how well an opinion holds up under its own terms, and "consistency" looks at how well it holds up when compared to other information in the record. Consistency is not at issue in this appeal.

4

In this case, we do not follow the ALJ's reasoning when he said that Dr. Fisher's opinion "is supported by her consultative examination findings of deficits in memory, [and] attention / concentration." Aplt. App. vol. I at 35. As Riley points out, Dr. Fisher's consultative examination findings included a test known as the Wechsler Memory Scale-IV. Part of the test is an assessment of "Immediate Memory," meaning "[the subject's] ability to recall verbal and visual information immediately after the stimuli is presented"; and an assessment of "Delayed Memory," meaning "the [subject's] ability to recall verbal and visual information after a 20 to 30 minute delay." Aplt. App. vol. III at 583. Dr. Fisher stated that Riley's Immediate Memory score was 69, which "is in the borderline range and at the 2nd percentile." *Id.* And his Delayed Memory score was 70, also "in the borderline range and in the 2nd percentile." *Id.* Finally, Riley's overall "Auditory Memory" was in the 1st percentile. *Id.*

Riley asks—fairly, we believe—how being in the first or second percentile for memory tasks can yield an opinion that he has only "*moderate* limitation in his ability to understand and remember simple instructions," especially given Dr. Fisher's further opinion that he has "*marked* limitation in his ability to understand and remember detailed instructions," Aplt. App. vol. III at 579 (emphasis added). His immediate and delayed memory could only be one percentile lower than it already is, and his auditory memory could not mathematically be any lower. Thus, where does the moderate/marked distinction come from? Where did Dr. Fisher draw that line? Riley quips, "[O]ne wonders what kind of score [Dr. Fisher] would have needed for

the individual to [have] 'marked' [limitations] in remembering simple instructions." Aplt. Opening Br. at 31.

We do not mean to say the ALJ could never find Dr. Fisher's opinion supportable. But the ALJ's supportability analysis merely pointed to the alleged congruence with the "consultative examination findings," without discussing what those consultative examination findings actually were. Under the circumstances of this case, that lack of discussion means the ALJ did not fulfill his duty to explain the supportability of the key medical opinion on which he based the RFC. We therefore must remand.[3]

## III.    CONCLUSION

We reverse the district court's judgment and remand with instructions to vacate the agency's decision and return this matter to the agency for further proceedings consistent with this order and judgment.

Entered for the Court

Gregory A. Phillips
Circuit Judge

---

[3] Riley raises a second alleged error, specifically, the ALJ's failure to discuss a June 2022 report from Kim Beair, MS, LPC, who did additional memory testing and again found memory deficits, arguably more severe than what Dr. Fisher found. The government says this report is irrelevant to the question of whether Riley was disabled as of March 2020. Riley says it is relevant because Beair was examining the effects of the original traumatic brain injury on which his disability claim is based. Because the ALJ never explained why he chose not to discuss the Beair opinion, and because the ALJ will need to take another look at Riley's case regardless, we do not resolve this issue. Riley may raise it before the agency, or not, as he sees fit.